IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CACIE BIDDLE,

      Plaintiff,

v.                                 Civil Action No. 1:14CV122
                                              (STAMP)

FAIRMONT SUPPLY COMPANY,
a foreign corporation,

      Defendant.


**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**AND DENYING AS MOOT PARTIES' MOTIONS IN LIMINE**

I. Procedural History

The plaintiff commenced this civil action in Marion County, West Virginia, which the defendants, Fairmont Supply Co. and Consol Energy, later removed. Following that removal, the parties then stipulated that defendant Consol Energy, Inc. should be dismissed without prejudice. ECF Nos. 8 and 9. Thus, the only remaining defendant is Fairmont Supply Company ("the defendant"). Later, the plaintiff filed a motion to file an amended complaint. This Court granted the plaintiff's motion. ECF No. 34. At issue now is the defendant's motion for summary judgment. ECF No. 80.[1]

_____

[1]On September 1, 2015, this Court sent a letter to counsel indicating its ruling as to the defendant's motion for summary judgment and the parties' motions in limine. ECF No. 103. This memorandum opinion and order serves as the formal ruling on those motions.

II.  <u>Facts</u>

The defendant hired the plaintiff in July 2009 as a warehouse manager in Bridgeport, West Virginia.  In her initial performance reviews from 2009 and 2010, the plaintiff's supervisors informed her about areas of her work performance that needed improvement. At that time, those supervisors believed that the plaintiff was making an effort to improve.

Starting in 2011, however, the supervisors began to be more concerned about the plaintiff's work performance.  They pointed to recurring issues such as improper maintenance of the warehouse, untimely responses to inquiries by employees and clients, and inaccurate inventory packing for customer deliveries.  ECF No. 81 Exs. 10 and 14.  In hopes of resolving those issues, the plaintiff's supervisors implemented a 90-Day Performance Improvement Plan for the plaintiff.  <u>Id.</u> at Ex. 11.  They reviewed that plan with the plaintiff.  Although the plan was in place, her performance did not substantially improve.  The plaintiff's supervisors repeatedly counseled the plaintiff about her daily responsibilities.  This occurred approximately 20 times over a 13-month period.  <u>Id.</u> at Ex. 2.  Based on those repeated occurrences, the defendant ultimately terminated the plaintiff's employment in February 2013.

While working for the defendant, the plaintiff states that her supervisors asked her to engage in questionable conduct, such as

refraining from listing certain employees with Driving-Under-the-Influence ("DUI") charges and not filing incident reports for broken light bulbs. The plaintiff also alleged that her supervisor yelled at her, that he referred to her once as "Sweetheart," and that she was assigned "secretarial" tasks despite being a manager.

Approximately one week before the defendant terminated her employment, the plaintiff contacted her human resources ("HR") manager by instant message. Id. at Ex. 15. The plaintiff then called her HR manager by telephone.[2] During that phone call, the plaintiff claimed that she felt harassed because of her work performance. More specifically, she disagreed with her supervisor's perception of her work performance. The HR manager informed the plaintiff that if she felt harassed, then a formal investigation would be conducted into the allegations. Further, the HR manager assured the plaintiff that if she wanted to file a complaint about the harassment, the plaintiff would face no risk of retaliation. That HR manager also offered to speak with the plaintiff and her supervisor. The plaintiff neither filed a formal complaint nor further inquired about the alleged harassment.

As a result of having her employment terminated, the plaintiff claims that she suffered lost wages, emotional distress, and other similar harms. In Count I, the plaintiff claims that the defendant

---

[2]The HR manager made notes about the phone call. ECF No. 81 Ex. 16. The plaintiff affirmed that those notes were a "fair summary" of what occurred. Id. at Ex. 5.

violated the West Virginia Human Rights Act ("WVHRA") by discriminating against the plaintiff based on her gender. Count II alleges that the defendant retaliated against the plaintiff in violation of the WVHRA. Count III contends that the defendant created a hostile work environment that subjected the plaintiff to harassment.[3] For relief, the plaintiff seeks compensatory damages, front pay, punitive damages, and attorney's fees and costs.

### III. Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>     (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
>     (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come

---

[3]In Count IV, the plaintiff claims that the defendant might contend that all claims must be resolved under a dispute resolution policy of the defendant. If that occurred, the plaintiff sought a declaratory judgment from the Court that any type of arbitration provision that may apply be considered unconscionable. However, in neither the motion for summary judgment nor any prior filings, the parties do not address that count. Accordingly, this memorandum opinion and order will not consider that claim as neither party has addressed it.

forward with facts sufficient to create a triable issue of fact."
Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir.
1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v.
Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  However, as the
United States Supreme Court noted in Anderson, "Rule 56(e) itself
provides that a party opposing a properly supported motion for
summary judgment may not rest upon the mere allegations or denials
of his pleading, but . . . must set forth specific facts showing
that there is a genuine issue for trial."  Id. at 256.  "The
inquiry performed is the threshold inquiry of determining whether
there is the need for a trial -- whether, in other words, there are
any genuine factual issues that properly can be resolved only by a
finder of fact because they may reasonably be resolved in favor of
either party."  Id. at 250; see also Charbonnages de France v.
Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should
be granted only in those cases where it is perfectly clear that no
issue of fact is involved and inquiry into the facts is not
desirable to clarify the application of the law." (citing Stevens
v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Supreme Court stated that "the plain language
of Rule 56(c) mandates the entry of summary judgment, after
adequate time for discovery and upon motion, against a party who
fails to make a showing sufficient to establish the existence of an
element essential to that party's case, and on which that party

will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.
In reviewing the supported underlying facts, all inferences must be
viewed in the light most favorable to the party opposing the
motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475
U.S. 574, 587 (1986).

## IV. <u>Discussion</u>

In its motion for summary judgment, the defendant argues that
no genuine issues of material fact exist for three reasons. First,
concerning the WVHRA discrimination claim, the defendant argues no
proof of discrimination exists. Therefore, the plaintiff cannot
show that "but for" her gender, the defendant would not have
terminated her employment. In support of that claim, the defendant
asserts that the plaintiff provided less than stellar work
performance. Thus, the termination of the plaintiff's employment
was justified on nondiscriminatory grounds. The defendant points
to specific instances of the plaintiff's poor management, such as
untimely deliveries, poor responses to internal inquiries, and
insufficient safety preparation for drivers. Even if the plaintiff
proves her prima facie case of discrimination, the defendant argues
that it had a legitimate reason for terminating the plaintiff's
employment. Second, concerning the unlawful retaliation claim, the
defendant contends that the plaintiff was discharged over a year
after the plaintiff engaged in any alleged protective activity.
Because no nexus exists between the alleged protective activity and

the termination of employment, the defendant believes the retaliation claim lacks merit. Third, the defendant argues that the plaintiff provides insufficient evidence to prove her hostile work environment claim.

In response, the plaintiff first contends that she has sufficient evidence regarding her WVHRA claim, specifically the "but for" element. Next, the plaintiff asserts that she received essentially no warnings about her poor work performance. The plaintiff believes that the record creates doubts regarding the defendant's legitimate reasons for firing her. The plaintiff then argues that although she did not file a formal complaint about her alleged harassment, she contacted her HR manager. Further, because she feared that filing a formal complaint would result in further harassment or retaliation, the plaintiff believes that such a complaint was unnecessary. Finally, concerning the plaintiff's hostile work environment claim, the plaintiff contends that her supervisor regularly yelled at her and engaged in similar harassing conduct. For those reasons, the plaintiff believes that the defendant's motion should be denied.

For the reasons set forth below, the defendant's motion for summary judgment is granted. Further, the currently pending motions in limine filed by the plaintiff and defendant are denied as moot.

The plaintiff's claims will be discussed in the order presented in her complaint.

A. <u>Employment Discrimination under the WVHRA</u>

Under the WVHRA, it is unlawful for an employer to discriminate against an individual regarding "compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required, even if such individual is blind or disabled." W. Va. Code § 5-11-9 (2012). Further, "discrimination" means "to exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status and includes to separate or segregate." <u>Id.</u> § 5-11-3(h).

To prove a prima facie case of employment discrimination under the WVHRA, the plaintiff must show that "(1) the plaintiff is a member of a protected class," (2) the employer "made an adverse decision against plaintiff," and (3) but for the plaintiff's protected status, the employer would not have made the adverse decision. Syl. Pt. 3, <u>Conaway v. E. Assoc'd Coal Corp.</u>, 358 S.E.2d 423 (W. Va. 1986); <u>see</u> <u>Smith v. Sears, Roebuck & Co.</u>, 516 S.E.2d 275 (W. Va. 1999; <u>Barefoot v. Sundale Nursing Home</u>, 457 S.E.2d 152, 161 (W. Va. 1995); <u>McCauley v. Merrimac, Inc.</u>, 460 S.E.2d 484 (W. Va. 1995)(per curiam). In proving the third requirement, the plaintiff must show evidence that would "sufficiently link" the

plaintiff's protected member status and the employer's decision to infer that the employer used discriminatory criteria. <u>Conaway</u>, 358 S.E.2d at 429-30 (footnotes omitted); <u>Smith</u>, 516 S.E.2d at 279. This could include an (1) employer's admission, (2) eliminating an apparently legitimate reason for the decision in showing unequal or disparate treatment between protected class members and others, or (3) "using statistics in a large operation" to show that protected class members received "substantially worse" treatment. <u>Conaway</u>, 358 S.E.2d at 429-30 (footnotes omitted).

If the plaintiff satisfies her burden, then the defendant must offer a legitimate, nondiscriminatory reason for the employment decision. <u>Barefoot</u>, 457 S.E.2d 152, 160. After the defendant presents such reasons, the plaintiff may then demonstrate that either (1) the defendant treated "age, gender, or ancestry" as a determinative factor in its employment decision or (2) the defendant's rationale serves as merely a pretext for discrimination. <u>Id.</u> To show pretext, a plaintiff must show direct or circumstantial evidence of falsity or discrimination. <u>Id.</u>

In this case, the plaintiff satisfies the first requirement because she is a member of a protected class based on her gender. <u>See</u> W. Va. Code § 5-11-3(h). The parties do not dispute that fact. In addition to being a member of a protected class, the plaintiff satisfies the second requirement because the defendant, her

employer, made an adverse decision against the plaintiff. The parties also do not dispute that fact.

The question is whether the plaintiff satisfies the third requirement of her prima facie case. The plaintiff must show that "but for" her gender, the defendant would not have terminated her employment. See Conaway, 358 S.E.2d at syl. pt. 3. However, the facts show that the plaintiff has not satisfied the third requirement of her prima facie case. The record shows that the plaintiff received multiple warnings about her poor work performance. Indeed, the plaintiff's supervisors noted that they had to counsel the plaintiff about her poor work performance approximately 20 times over a 13-month period. ECF No. 81 Ex. 2. The defendant provides a thorough number of emails between supervisors, wherein they describe the plaintiff's less-than-stellar work performance and their repeated discussions with the plaintiff about such performance. Id. at Exs. 10 and 14. The defendant even provided the plaintiff with a 90-Day Performance Improvement Plan, which ultimately did not remedy the situation.

All of the above facts show that the defendant provided the plaintiff numerous opportunities to improve her work performance. It would be quite unusual for an employer engaging in discriminatory conduct to pursue such corrective and positive endeavors for the benefit of the plaintiff. In fact, the supervisor who hired the plaintiff stated that they hired the

plaintiff because "we felt that [the plaintiff] was qualified to come in at that position and be trained in the areas she might lacked [sic] some things that we needed. There was a good balance of what we were looking for and what we saw as a potential upside." Id. at Ex. 2. The plaintiff has proffered insufficient evidence, if any, that would "sufficiently link" the plaintiff's gender and the employer's adverse decision. Conaway, 358 S.E.2d at 429-30 (footnotes omitted); Smith, 516 S.E.2d at 279. Therefore, the plaintiff has thus far failed to prove her prima facie case.

Even if the plaintiff proved her prima facie case, the defendant offers a legitimate, nondiscriminatory reason for terminating her employment. The plaintiff maintained a consistent record of poor work performance, which included lackluster inventory management, inadequate safety measures, and noncompliance with other company procedures. ECF No. 81 Ex. 10. Neither the plaintiff nor the record shows that the defendant maintained a discriminatory reason for terminating the plaintiff's employment. Rather, the record demonstrates a warranted dissatisfaction in the plaintiff's performance, followed by numerous attempts at rectifying the situation. The defendant repeatedly notified the plaintiff of her need to improve. Clearly, the defendant has proffered a legitimate, nondiscriminatory reason for terminating the plaintiff's employment.

As stated above, the burden shifts back to the plaintiff to
show that the defendant's legitimate reason serves as merely a
pretext for a discriminatory motive.  To show pretext, a plaintiff
must show direct or circumstantial evidence of falsity or
discrimination by the defendant.  Phrased another way, "the
plaintiff must prove both that the reason was false and that
discrimination was the real reason for the challenged conduct."
DeJarnette v. Corning, Inc., 133 F.3d 293, 298 (4th Cir. 1998)
(internal citations, quotations, and emphasis omitted).  In this
case, the plaintiff offers no such evidence.  In addition to the
repeated work performance complaints by the defendant, the
plaintiff received the same disciplinary and counseling practices
as other employees of the defendant.  ECF No. 81 Exs. 2, 25, and 7.
Moreover, the plaintiff received numerous opportunities to resolve
her performance issues before her employment was ultimately
terminated.  The plaintiff has not proffered evidence, either
circumstantial or direct, that the defendant's allegations of poor
performance were false.  Rather, the record shows an employee who
over a 13-month period received many warnings that the defendant
was not satisfied with her work performance.  Further, the
plaintiff received opportunities, including a 90-Day Performance
Improvement Plan, to improve her performance to a satisfactory
level.

The only evidence that the plaintiff proffers is that she thought her work was satisfactory and that her coworkers thought she did a good job. However, the United States Court of Appeals for the Fourth Circuit has explicitly stated that "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." DeJarnette, 133 F.3d at 299 (internal citations and quotations omitted). Even more straightforward, "the plaintiff's perception of [her]self" is irrelevant, and that "plaintiff's coworkers may have thought that [she] did a good job, or that [she] did not deserve [to be discharged], is close to irrelevant." Id. (internal citations and quotations omitted). Therefore, the fact the plaintiff believes that she provided satisfactory work, or that her coworkers thought the same, carries little weight. Without more, such a self-assessment by the plaintiff is not enough to show pretext, or frankly, to satisfy any of the other requirements for a discrimination claim under the WVHRA. Thus, the plaintiff has not established her discrimination claim under the WVHRA, or demonstrated that genuine issues of material fact exist. Accordingly, the defendant's motion for summary judgment must be granted as to that claim.

B. <u>Unlawful Retaliation under the WVHRA</u>

The WVHRA prohibits retaliatory discharge, such as "any form of reprisal or otherwise discriminat[ing]," against a person

"because he or she has opposed any practices or acts forbidden under" the WVHRA or because that person "filed a complaint, testified, or assisted in any proceeding under" the WVHRA. W. Va. Code § 5-11-9(7)(C). The Supreme Court of Appeals of West Virginia has interpreted such protected activity or opposition as "that which challenges any practices or acts forbidden under" the WVHRA. Hanlon v. Chambers, 464 S.E.2d 741, 753 (W. Va. 1995) (internal quotations omitted). In Hanlon, the Court held that the WVHRA prohibited

> an employer or other person from retaliating against any individual for expressing opposition to a practice that he or she reasonably and in good faith believes violates the provisions of the Human Rights Act. This standard has both an objective and a subjective element. The employee's opposition must be reasonable in the sense that it must be based on a set of facts and a legal theory that are plausible. Further, the view must be honestly held and be more than a cover for troublemaking.

Id. at 754. A protected activity includes the filing of a complaint against an employer for discrimination. See, e.g., Roth v. DeFeliceCare, Inc., 700 S.E.2d 183, 193 (W. Va. 2010); FMC Corp. v. W. Va. Human Rights Comm'n, 403 S.E.2d 729, 732 (W. Va. 1991).

To prove a prima facie case of retaliatory discharge under the WVHRA, a plaintiff must prove the following: "'(1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation), (4) that

complainant's discharge followed his or her protected activities within such period of time that the court can infer retaliatory motivation." Hanlon, 464 S.E.2d at syl. pt. 10 (quoting Syl. Pt. 4, Frank's Shoe Store v. W. Va. Human Rights Comm'n, 365 S.E.2d (W. Va. 1986); see Syl. Pt. 1, Brammer v. W. Va. Human Rights Comm'n, 394 S.E.2d 340 (W. Va. 1990).

In this case, the plaintiff claims that the defendant unlawfully retaliated against her because she disagreed with certain decisions by her supervisor. Further, the plaintiff contends that the defendant retaliated against her because she raised a claim of harassment. That harassment was related to the plaintiff's disagreement about the defendant's assessment of her job performance. As will be discussed below, the plaintiff's claim is slightly misguided.

The plaintiff allegedly disagreed with her supervisor about whether a hose technician should be listed under a Department of Motor Vehicles ("DMV") record review, and whether she needed to file an incident report about a broken light bulb. The plaintiff's supervisor responded in the negative to both of those questions. Regarding the hose technician, the plaintiff believed that the hose technician had been charged with a DUI while driving a company truck. By excluding him from the DMV record review, the plaintiff allegedly believed that her supervisor attempted to hide the fact of his prior charge so he could continue to operate company

vehicles. As to the light bulb, a coworker broke a light bulb, and the plaintiff sought to file an incident report. Her supervisor believed such report was unnecessary.

Regarding the disagreement between her and her supervisor about listing the hose technician and filing an incident report, this Court does not believe those actions constitute a protected activity. As stated earlier, a protected activity is one that "challenges any practices or acts forbidden under" the WVHRA. Hanlon, 464 S.E.2d at 753 (internal quotations omitted). Whether to list certain technicians or whether to file an incident report for a broken lightbulb are not, in the context of this civil action, protected activities. Refraining to do either did not violate the WVHRA. Further, both events occurred in 2012, which was more than a year before the defendant terminated the plaintiff's employment. In light of the inconsequential nature of the two incidents, that time span does not create an inference of a retaliatory motive. See, e.g., Frank's Shoe Store, 365 S.E.2d at 259 (finding termination from employment one week after filing a sexual discrimination complaint as creating an inference of retaliatory motivation). Thus, even if the two incidents described above were protected activities, the plaintiff has not established her prima facie case.

Concerning the alleged retaliation for filing a claim of harassment, that would appear to be a protected activity. The

16

Supreme Court of Appeals of West Virginia has held that as such. See, e.g., Roth, 700 S.E.2d at 193; FMC Corp., 403 S.E.2d at 732. The plaintiff complained to the appropriate HR manager that she was being unfairly harassed about her work performance. Id. at Ex. 5. She did so by instant messaging and calling her HR manager. However, notes taken by the HR manager from the phone call point out that the plaintiff simply disagreed with her supervisor's assessment of her work. The HR manager offered to investigate the plaintiff's concerns if the plaintiff wished. Further, the HR manager assured her that she would not be retaliated against if an investigation occurred. Id. at Exs. 15 and 16. The plaintiff confirmed that the HR manager's notes about her discussion with the plaintiff were a "fair summary" of what occurred. Id. at Ex. 5. In addition, the plaintiff confirmed that she did not file a claim for harassment. Id.

The problem, however, is that the plaintiff did not file a claim of harassment. ECF No. 81 Exs. 5 and 15. One of the requirements for proving a prima facie case of unlawful retaliation is that the employer was aware of the protected activities. Without filing a complaint of harassment, the defendant would not have been aware of the plaintiff's protected activity. As stated by the defendant, the plaintiff "could not have been retaliated against because of a harassment claim she did not make." Although the defendant allegedly terminated the plaintiff's employment

17

within a week after she contacted the HR manager, the record does not show that her supervisors were aware of her harassment concerns. Moreover, the plaintiff refrained from filing a claim of harassment, and an investigation did not occur. The HR manager repeatedly reassured the plaintiff, both by instant messages and by phone, that she would not face retaliation for filing a claim or for having an investigation occur. ECF No. 81 Exs. 15 and 16. Those facts, coupled with the repeated instances of the plaintiff's performance issues, show that the plaintiff's employment was not terminated due to unlawful retaliation under the WVHRA.

C. <u>Hostile Work Environment/Harassment</u>

A prima facie case for harassment under the WVHRA, which is based on a hostile work environment, requires that a plaintiff prove the following: "(1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer." <u>Spicer v. Com. of Va., Dep't of Corr'ns</u>, 66 F.3d 705, 710 (4th Cir. 1995) (citing <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17 (1993)); Syl. Pt. 6, <u>Constellium Rolled Products Ravenswood, LLC v. Griffith</u>, 775 S.E.2d 90 (W. Va. 2015). As to the third element, it is both a subjective and objective standard. That means a plaintiff "must show that [he or she] did perceive, and a reasonable person would

perceive, the environment to be abusive or hostile." <u>E.E.O.C. v.</u>
<u>Central Wholesalers, Inc.</u>, 573 F.3d 167, 175 (4th Cir. 2009).
"When determining whether the harassing conduct was objectively
severe or pervasive, we must look at all the circumstances,
including the frequency of the discriminatory conduct; its
severity; whether it is physically threatening or humiliating, or
a mere offensive utterance; and whether it unreasonably interferes
with an employee's work performance." <u>Id.</u> at 176 (internal
citations and quotations omitted).

As previously mentioned, the plaintiff claims that her
supervisor yelled at her, that her supervisor referred to her once
as "Sweetheart," and that the plaintiff believed that she performed
more secretarial rather than supervisory duties. However, the
plaintiff's assertions are questionable at best. The record shows
that the plaintiff's coworkers recounted no instances of unwelcome
conduct by the plaintiff's supervisor, such as yelling, touching,
or derogatory references. <u>See</u> ECF No. 81 Exs. 2 (coworker
described interactions between the plaintiff and supervisor as "run
of the mill"), 17 (a different coworker never observed the
supervisor use derogatory names such as "honey" when referencing
female employees), and 18 (a different coworker never observed the
plaintiff's supervisor engage in harassing conduct). Moreover, the
plaintiff stated that the alleged harassment was based on her work
performance. <u>Id.</u> at 5. Indeed, the plaintiff explicitly stated

that the harassment stemmed from "performance issues." Id. The plaintiff does not show specific instances where her supervisors engaged in unwelcome conduct that was based on the plaintiff's gender. Furthermore, the plaintiff points to no proof that her job requirements were more or less "secretarial" than other managers. Based on the evidence, or the lack thereof, proffered by the plaintiff, it is clear she has not established her hostile work environment claim.

The plaintiff's situation is in stark contrast to cases involving actual harassment based on a hostile work environment. A suitable example occurred in E.E.O.C. v. Central Wholesalers, Inc., 573 F.3d 167 (4th Cir. 2009).[4] In that case, the plaintiff, an African-American female, complained of harassment to her coworkers, supervisors, and the president of the company. More specifically, her coworkers used racial slurs and derogatory terms to describe women. Further, her coworkers used excessive profanity and viewed pornography at work. Id. at 170. The plaintiff repeatedly informed her coworkers and supervisors that she objected to such behavior, and she filed a complaint that resulted in an

---

[4]Although Central Wholesalers, Inc. did not involve a claim under the WVHRA, the same elements and standards of proof applied to the harassment based on a hostile environment claim as they do when brought under the WVHRA. Compare Syl. Pt. 6, Constellium Rolled Products Ravenswood, LLC v. Griffith, 775 S.E.2d 90 (W. Va. 2015).

investigation. The defendant provided limited responses to the plaintiff's complaints, and implemented some corrective action.

Based on the conduct described above, the Court determined that the harassment was unwelcome, and that the harassment was based on the plaintiff's gender and race. In particular, they noted that the racial slurs and profanity related to her race and gender. The Court then found that her environment was subjectively and objectively abusive. More specifically, the Court found that her repeated complaints to supervisors about harassment showed that she believed her work environment was hostile and abusive. Further, the plaintiff satisfied the objective component based on her coworkers use of racial slurs, profane language regarding women, watching pornography at work, and other excessively lewd conduct. Id. at 176. Finally, the Court found that the plaintiff showed a basis for finding the defendant liable, because she repeatedly complained about the harassment to her supervisors. Moreover, those supervisors, despite knowing about the explicitly harassing conduct, engaged in insufficient remedial efforts. Therefore, the Court in Central Wholesalers, Inc. found that the plaintiff established her claim and demonstrated triable issues of fact.

Comparing the facts of Central Wholesalers, Inc. to those of this civil action, the plaintiff has neither established her claim nor demonstrated triable issues of fact. Unlike the plaintiff in

<u>Central Wholesalers, Inc.</u>, the plaintiff here never filed a formal complaint of harassment, and only spoke one time with her HR manager.  Further, any alleged harassing conduct was based on her work performance.    In   contrast,   the   plaintiff   in   <u>Central Wholesalers, Inc.</u> filed a formal complaint and repeatedly informed her supervisors and the president of the company that she objected to the ongoing harassment.  More importantly, the harassment in <u>Central Wholesalers, Inc.</u> was clearly based on the plaintiff's race and gender.  The actions of the plaintiff's coworkers in <u>Central Wholesalers, Inc.</u> also subjectively and objectively created an abusive hostile work environment.  Those actions included yelling at the plaintiff, using excessive profanity and racial slurs, and watching pornography, among other harassing and inappropriate conduct.

In this case, the plaintiff points to three unsubstantiated instances involving yelling, a reference to her as "Sweetheart," and claiming she engaged in secretarial tasks despite being a manager.  None of those claims are substantiated except by the plaintiff's testimony, and the record paints a completely different picture.  The plaintiff here has not shown, among other things, that any of that above conduct subjectively and objectively created a hostile and abusive work environment.

In short, the plaintiff has not met her burden as to her hostile work environment claim.  More generally, the plaintiff has

not met her burden as to any of her claims alleged in the complaint, or at least shown that genuine issues of material fact exist. Because such issues are not present, the defendant's motion for summary judgment must be granted in its entirety.

## V. Conclusion

For the reasons discussed above, the defendant's motion for summary judgment (ECF No. 80) is GRANTED. Accordingly, the currently pending motions in limine (ECF Nos. 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102) are DENIED AS MOOT. Further, it is ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    September 24, 2015


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE